[PHILADELPHIA, JANUARY 26th, 1839.]

## BRITTON and Others *against* STANLEY.

1. The plaintiffs agreed jointly to sell and convey to the defendant all their right, title and interest in three certain lots of ground. In an action for a breach of the contract, it appeared that they were separately seized of the three lots. *Held,* that this was not a sufficient objection to their recovery in the action.
2. The plaintiffs, to prove title in themselves, gave in evidence deeds to them from A. about four months and a half before the date of the agreement, and proved that they were in actual possession. They also proved that they placed the deeds in the defendant's possession, who kept them some time, and refused to return them. *Held,* that the defendant had at least waived his right to call for evidence of title in A.
3. The plaintiffs had tendered to the defendant deeds executed by themselves which contained erasures. *Held,* that as the erasures were proved on the trial to have been made before execution, and the fact was so stated on the face of the deeds, this was not a sufficient objection.
4. The deeds from A. to the plaintiffs, which were admitted as proof of title in the plaintiffs, stated the amount of the consideration paid by the plaintiffs to A. *Held,* that this was *prima facie* evidence to go to the jury of the value of the property.

THIS was an action on the case brought in this Court by Hall Britton, George Ridgeley, and Aaron Wilson against Jesse Stanley.

The plaintiffs declared upon an agreement by which the defendant contracted to purchase of them three certain lots of ground situate on the north side of Washington street, at the distance of one hundred and forty-three feet east of Twelfth street, in the city of Philadelphia, (describing them,) for a certain price, &c. The declaration also contained a count for money paid, &c.

(Britton *v.* Stanley.)

The defendant pleaded *non assumpsit*, &c.

At the trial, before KENNEDY, J., at a Court of Nisi Prius held in Philadelphia, on the 28th of April, 1835, the plaintiffs' counsel having proved the agreement between the parties, offered the same in evidence, which was objected to on the part of the defendant, but admitted by the judge. The plaintiffs' counsel then, for the purpose of showing title in the plaintiffs, produced a deed from Freeman Scott and wife to Hall Britton, for a lot of ground on the north side of Washington street, at the distance of one hundred and *fifty*-three feet east of Twelfth street, containing fifteen feet in front. This was objected to by the defendant's counsel, on the ground of a variance from the declaration, which described the lot as distant one hundred and *forty*-three feet from Twelfth street. The objection was overruled by the learned judge, and the deed admitted. The plaintiffs' counsel then gave in evidence a deed from the same grantors to George Ridgeley, and another to Aaron Wilson for adjoining lots.

Parol evidence was then given on both sides, which is sufficiently stated in the charge of the judge, which was in substance as follows:

" This is an action brought by the plaintiffs against the defendant, to recover damages for breach of an agreement alleged by them to have been made with him, which is set forth in their declaration. The first question, then, which presents itself for your consideration and decision is—was such an agreement made? The evidence adduced by the plaintiffs of the agreement, is in writing, which has been proved by one of the subscribing witnesses thereto, to have been signed and acknowledged by the plaintiffs and the defendant, respectively, in his hearing and presence. The fact of its execution is not controverted. But several legal objections have beeen made by the counsel for the defendant to the plaintiffs' maintenance of this action, upon which the direction of the Court has been requested. Among them, the first is, that the seisin of the plaintiffs, as set forth in their declaration, is not supported by the terms of the agreement given in evidence by them : but on the contrary is incompatible with, and of a nature quite different from that which they undertake to sell and convey to the defendant. I do not consider this objection valid : because the precise nature and extent of the interest and estate that each of the plaintiffs had in the ground sold, at the time of the agreement, is not set out in terms by it; that is, it is not mentioned specifically therein, whether it was a joint or several interest, or interest that each had in distinct and different parts of ground, but when taken collectively embraced the whole of it; it is set forth in general terms merely, that they hereby agree to sell and convey all their right, title and interest in and to the ground

(Britton *v.* Stanley.)

therein described. I therefore think, although the covenant on the part of the plaintiffs to sell and convey, is joint and not several, yet that it embraced all the interest and estate which they held either jointly or severally in the ground, as also all interest that either of them had to any and every part and parcel thereof. Now if the plaintiffs had made it appear by their declaration, that in reality they had no right or interest whatever in the ground, or such as did not cover in some way the whole of what they agreed to sell and convey to the defendant, this might not have accorded well with this agreement, and might have been an insuperable objection to their recovery; but so far from making this appear, they have, by way of recital, shown a seisin in fee, which each of them had exclusively, in his own separate right, to different parts of the ground, which taken collectively, show that they were the owners of the whole of it; in other words, that each of them owned separately fifteen feet of the ground in front, different from that owned by each of the other two, extending back the whole distance mentioned in the agreement, and thus embracing the whole of the ground described therein as the subject-matter of it. This, it appears to me, is not inconsistent with the agreement given in evidence by the plaintiffs; and if true, enabled them to give to the defendant all that he had by the terms of the agreement a right to require.

The second objection is, that it has not been shown that Freeman Scott, under whom the plaintiffs claim title to the ground in question, by virtue of their several deeds of conveyance given in evidence, and made by him and his wife to them respectively, had any estate in the ground to pass or convey thereby. These deeds of conveyance appear to have been executed on the 14th of April, 1832, about four and a half months before the agreement given in evidence, was made between the parties to this action. It further appears from the evidence, that the plaintiffs were in the actual possession and seisin of the ground, before and at the time of making the agreement— improving it as the respective owners thereof; and that immediately after the execution of the agreement, they, at the request of the defendant, delivered over to him their deeds from Scott, to enable him, as he said, to get deeds drawn to be executed by them to him. And although the plaintiffs had several interviews with the defendant, after that he was to have had the deeds drawn, in which they urged and pressed him either to have it done immediately, or to return them their deeds, yet it does not appear that he ever once objected that the plaintiffs derived no title to the ground under their deeds from Scott. He never appears to have expressed or entertained any distrust of the kind. On the contrary, when he had failed to get deeds drawn for the plaintiffs to execute to him, according to his promise, and they insisted upon his giving back to them the deeds from Scott, he told them that they should never have either the deeds or the ground again. Under all these circumstances, taken together,

(Britton *v.* Stanley.)

it appears to me that if the defendant by his conduct has not admitted that Scott had a good title to the ground at the time he conveyed it to the plaintiffs, he has at least waived all right to make the objection at this late period, without first giving some evidence tending to prove that the fact was so.

The third objection is, that the plaintiffs were bound to tender a deed or deeds of conveyance, executed in due form by them to the defendant for the ground, before the commencement of this action; and that without having done this, they cannot recover. If it be true, as has been testified by some of the witnesses, that the defendant undertook to get the deeds drawn himself, which the plaintiffs were to make to him in conformity to their agreement; and that upon failing to do this within the time he promised, he refused to return them their deeds of conveyance from Scott, that they might get such deeds drawn themselves and executed to him for the ground, declaring also, at the same time, that he would not accept of any deeds that they would get drawn, I am inclined to think that it does not lie in the mouth of the defendant now to object that such deeds were not made and tendered to him by the plaintiffs, before the commencement of this action—for these things being so he may well be considered as having prevented it: and if so, ought not to be permitted to take advantage of it.

But, according to the evidence, the plaintiffs did sign and seal deeds, conveying in fee simple to the defendant their respective portions of the ground, accordingly as it had been conveyed to them separately by Freeman Scott and his wife; and, after having done so, offered to deliver them to the defendant, but he refused to receive them.

And these deeds or instruments of writing are made the ground of a fourth objection, which is, that the defendant was not bound to accept of them, because they appear from their face to have been written in part upon erasures. I must confess that I am unable to perceive any good ground for this objection: because it would seem from the evidence of the scrivener, that they are in this respect as they came from his hands; and besides, the defendant being a party to them, knew that they could not become deeds until they were delivered to him as such, and he accepted of them; and that although alterations might have been made in them after the signing and sealing thereof, yet the delivery being made after such alteration by the grantors, and being too the consummation of the execution of the deeds, made all good. But, in this case, it does not appear that any alterations were made after the signing and sealing of the instruments; nor does it appear that the defendant refused to receive them on this account.

It seems, however, from the evidence, that an objection of some kind was made by the defendant, when the deeds were offered to him by the plaintiffs; but what it was, has not been distinctly shown.

(Britton *v.* Stanley.)

It would rather appear from what has been testified to by Mordecai Wilson, a witness for the plaintiffs, and again by Mark M. Reeve, a witness for the defendant, that the deeds must have been offered twice to the defendant; because neither of these witnesses can recollect that any other person was present at the time he saw the offer made, except the parties and himself. Wilson says that the defendant, upon looking at the deeds, when offered to him, made some objection to the form of them, which the witness cannot now recollect, but that was all: and that the defendant also said that he would not have taken them if they had been right, nor any deeds that the plaintiffs could have had drawn, and that he had told them so before. Reeve says that three coloured men tendered deeds to the defendant for the ground, lying where the ground in question is situate, as they said, and he thinks they said that they made the tender by the direction of Mr. Ingersoll; that the defendant refused to receive the deeds: first, because the coloured men had not complied with their contract; and again, because the deeds were not correct. The witness also says that the defendant mentioned wherein the deeds were not correct, and likewise in what particular the coloured men had failed to comply with their contract, but he cannot recollect either. He however says, that when the defendant stated wherein it was that they had not fulfilled their contract, one of them said that they would be enabled to comply with their contract as soon as he would fulfil his, to which the defendant said that was not their bargain—that he was to have the property clear of all incumbrances.

And here, from the evidence of Reeve, who is a brother-in-law of the defendant, a fifth objection is raised against the plaintiffs' recovering. If the property was really encumbered at the time the deeds were offered to the defendant, he was bound to accept of them, and the plaintiffs would not be entitled to recover in this action. But there is not even the shadow of evidence going to show that the property was encumbered at this time, or indeed at any other, unless it be that of Mark M. Reeve, which is altogether of too loose and unsatisfactory a character to be relied on for such purpose. If any incumbrance existed against the property, it must be susceptible of other and better evidence within the power of the defendant to adduce, from which it would appear what it was, that it might be judged of, and the plaintiffs afforded an opportunity to repel it, if within their power. But, instead of adducing such other evidence to show that any incumbrance existed against the property, the defendant has not even dared to say what the incumbrance was, or to give it a name. In the absence of all evidence showing what this pretended incumbrance was, and the nature of it, there is every reason to conclude that none existed. It is easy to perceive, that if such loose and vague testimony as the defendant has given in this

(Britton v. Stanley.)

case, were to be held sufficient to establish incumbrances, without showing what they were, of what they consisted, where they were to be found, or any thing whatever about them—plaintiffs, however good their claims might be, must ever be defeated; because without knowing, or at least, being told by the defendants what the incumbrances were, it would be extremely difficult, if not utterly impossible, to adduce repelling testimony. It would be worse than to fight or to contend against shadows.

A sixth objection raised to the plaintiffs' maintaining this action is, that they have not shown that they, prior to the commencement of it, made the defendant acquainted with the cost of the work and materials employed in the commencement of buildings on the property, which, by the terms of the agreement, were to be paid for by the defendant, in addition to the $2,350 which he was to pay for the ground alone. This work and these materials were only to be paid for, in case the defendant paid them for their ground, and entitled himself to claim it; they did not desire to be paid for the work and materials, without first being paid for the ground; and until they should discover that he was willing and about to pay them for the latter, it was unnecessary to present him with the price or cost of the former. Besides, they had a right, if they pleased, to waive payment of the cost of the work and materials altogether: and as they claim nothing in this action, for and on account of them, it is no objection to their claim for damages sustained by them, because the defendant did not pay them the price of the ground, and accept of their conveyances for it.

The seventh and last objection is, that the agreement upon which this action was founded, was annulled and rescinded by another agreement made between the parties before its institution. Of this latter agreement, however, I think there has been no evidence given, that would warrant or justify your finding that it was so.

Having noticed the several objections made by the counsel for the defendant against the right of the plaintiffs to maintain this action, it only remains to say a few words on the subject of the damages in case you should give a verdict for the plaintiffs. If you should be of opinion that the plaintiffs were ready and willing to perform their agreement with the defendant, according to the tenor and effect of it, and that they offered to do so, but that he failed to perform his part of the same, and prevented the plaintiffs from fulfilling the agreement on their part, the defendant ought to pay such damages to them as they have sustained by his non-performance of the agreement. It appears from the deeds of conveyance made by Scott and wife to the plaintiffs, about four and a half months before they made the contract for the sale of the property to the defendant, that they paid Scott twelve hundred and seventy-five dollars for it. This I think may be considered *prima facie* evidence of the fair value of it at the time they bought: and in the absence of testimony showing

(Britton *v.* Stanley.)

the contrary, it may be presumed that the value of it was not much changed by the lapse of the four and a half months. If this be so, the difference between twelve hundred and seventy-five dollars and two thousand three hundred and fifty dollars, would seem to be a portion of the damage sustained by the plaintiffs. For it is clear if he had paid them this latter sum as he undertook to do, the property would have been worth that much to them. It is true that it does appear from the declarations of the defendant, and from the opinion of some of the witnesses, at least one, that he agreed to give an extravagant price for the property; much more than it was worth perhaps to any body else, or than it would have been to himself, had he not had other property adjoining or in the immediate vicinity of it; but if you believe the evidence, it was a bargain of his own seeking entirely, and made in the most perfect fairness on the part of the plaintiffs. It is also alleged that the plaintiffs sustained damages by quitting the buildings which they had commenced putting up on the property, and by discharging the workmen employed for that purpose by them, in consequence of their agreement to sell the property to the defendant; that after they discovered that the defendant was unwilling to pay for the property as he had agreed, they were unable to resume the building of the houses that autumn again, and were compelled to defer it until the spring following, when they had to pay more for bricks for erecting the houses than they would have been obliged to have paid in the fall; and were likewise prevented from getting their houses finished in the course of the same autumn after they agreed to sell to the defendant, as they would have done had he not agreed to buy of them. So far as the evidence goes to show that damages were actually sustained on this account, it is right for you to allow them.

I am particularly requested to instruct you whether the deeds given in evidence from Scott and wife to the plaintiffs, can be considered evidence at all in this case, of the value of the property. These deeds having been fairly made for aught that appears to the contrary, and having been duly acknowledged and authenticated, according to the recording acts, are *prima facie* evidence, not merely of the property therein described being conveyed by Scott and wife to the plaintiffs, but of the prices also for which it was sold at that time; and the prices or consideration therein mentioned. I therefore consider them *prima facie* evidence of the value of the property so sold at the date of these conveyances. I have always supposed that the price given for property on a private and voluntary sale was at least some evidence of its value."

The jury found a verdict for the plaintiffs. The defendant moved for a new trial, and assigned the following reasons.

" 1. The learned judge who tried the cause erred in admitting in

evidence (under the narr. in this case,) the written contract of the 31st August 1832, which varies from the agreement set forth in the narr. both in the description of the land and of the title to it.

2. The learned judge erred in admitting in evidence, (under the narr.) a deed from Freeman Scott and wife to Hall Britton, dated April 14th, 1832, purporting to convey a lot 153 feet east of Twelfth street; the lot described in the narr. being 143 feet east of Twelfth street.

3. The learned judge erred in charging the jury that by the agreement of the 31st August, 1832, the plaintiffs agreed to sell only such interest as they had in the lands mentioned, whatever that might be, and that the fact that each one of the plaintiffs had but a several interest in a distinct portion of the said land, and that they had no joint or common interest, at any time, in the whole land, formed no objection to their recovery in this action.

4. The learned judge erred in charging the jury that the deeds from Freeman Scott and wife to the respective plaintiffs, dated 14th April 1832, were sufficient evidence of the plaintiff's title to the lands in question, and that inasmuch as it was proved that the said deeds had been for some time in the defendant's possession, and it might be presumed that he had examined them, and as it was not proved that he had made any objection to the title, and he did not attempt to impeach it by evidence, it was fair to presume that he agreed to take deeds from the plaintiffs under Freeman Scott's title.

5. The learned judge erred in charging the jury that, as it appeared in evidence, that the defendant had at one time undertaken to have the deeds drawn by his own scrivener, the plaintiffs were not bound to tender him deeds for the land in question, before bringing this action.

6. The learned judge erred in charging the jury that the erasures on the face of the deeds, tendered to the defendant by the plaintiffs, did not constitute a sufficient objection to justify the defendant in refusing to accept the said deeds.

7. The learned judge erred in charging the jury that, under the narr. in this case, it was not necessary for the plaintiffs to prove that the defendant ever had notice of the value of the work done and materials which were on the ground at the time of making the contract, as averred in the narr.

8. The learned judge erred in charging the jury that there was no evidence that the contract had been annulled by the parties; and that if it had been annulled there ought to have been a release by the plaintiffs to the defendant, and that release ought to have been produced and given in evidence.

(Britton *v.* Stanley.)

9. The learned judge erred in charging the jury that there was not sufficient evidence of the existence of an encumbrance on the land agreed to be sold by the plaintiffs.

10. The learned judge erred in charging the jury that the recital of the consideration in the deeds from Freeman Scott and wife to the plaintiffs, dated 14th April, 1832, was *prima facie* evidence against the defendant, both of the price and value of the lands in question.

11. The learned judge erred in charging the jury, that if they believed that the lands mentioned in the contract of 31st August, 1832, were in reality worth only $1,275, at the time when the defendant agreed to pay $2,350 for them, the jury ought to give the difference between the sums, in damages.

12. The learned judge erred in refusing to charge the jury that it lay upon the plaintiffs to prove the damages which they had sustained, and that in the absence of such proof the jury ought to give nominal damages only.

13. The charge of the learned judge was against law.

14. The verdict of the jury was against the evidence.

15. The damages are excessive."

Mr. *Meredith* in support of the motion.

1. There was a substantial variance between the averments in the declaration, and the evidence offered by the plaintiff, both in respect to the description of the land, and of the title to it. Upon this point were cited *Dunbar* v. *Jumper*, (2 *Yeates*, 74.) *Umbehocker* v. *Russell*, (2 *Yeates*, 339.) *Evert* v. *Barr*, (4 *Yeates*, 99.) *Stevens* v. *Barr*, (7 *Serg. & Rawle*, 505.) *Jordan* v. *Cooper*, (3 *Serg. & Rawle*, 564.) *Church* v. *Fetterow*, (2 *Penn. Rep.* 301.) *Funk* v. *Arnold*, (3 *Yeates*, 428.) *Snell* v. *Moses*, (1 *Johns. Rep.* 98.) *Selwyn's N. P.* 93. *Stephens on Pleading*, 107, 8.

2. Another question is, whether if a man deals with three individuals for a joint sale by them of three lots, it is competent for them to put him off with a separate conveyance by each, of distinct lots, apportioning the consideration. The contract in this case was a joint one, for three lots. The declaration avers a separate seisin. Even if they were separately seized, the defendant was entitled to a joint deed, with joint covenants of warranty as to the whole. He may have relied on the personal ability or integrity of one as to the whole land. The cases show that the parties are held to great strictness in such contracts. *Mason* v. *Corder*, (7 *Taunt.* 9; S. C. 2 *Eng. Com. Law Rep.* 7.) *Cane* v. *Baldwin*, (1 *Starkie*, 65; S. C. 2 *Eng. Com. Law Rep.* 297.) *Faulkner* v. *Eddy*, (1 *Binn.* 190.) *Peters* v. *Coudron*, (2 *Serg. & Rawle*, 83.).

3. The plaintiffs showed no title other than the deed from Free-

man Scott.  It was necessary for them to prove title in Scott.  It is settled that some title must be shown in a grantor before a deed from him can be read in evidence.  *Hoak* v. *Long*, (10 *Serg. & Rawle*, 1.)  *Kennedy* v. *Skeer*, (3 *Watts*, 95.)  A vendee has a right to object to the title unless possession and keeping the abstract imply a waiver.  Mere possession of a lot is not sufficient to entitle a vendor to recover on such a contract.  Here the deed from Scott must be put out of the question.  *Phillips* v. *Fielding*, (2 *H. Bl.* 123.)  *Duke of St. Albans* v. *Shore*, (1 *H. Black.* 270.)  *Luxton* v. *Robinson*, (*Douglas*, 620.)  *Sugden on Vendors*, ch. 7.  A defendant may waive tender of deeds; but by refusing to carry out the contract he does not waive the evidence of title.  The plaintiffs averred title in the declaration, and were bound to prove it.  It is no answer to say, that we ought to have pointed out defects.  We had no knowledge of the title; and the *onus* lies on the other party.

4. There were material erasures on the face of the deeds tendered.  The learned judge said on the trial that they were not important, because the scrivener proved that they were made before delivery; but is a purchaser bound to take a deed which imposes on him the necessity of producing parol evidence on every occasion to prove this fact?  The general and immutable rule is, that an erasure will be presumed to have been made after delivery.  *Morris* v. *Vanderen*, (1 *Dall.* 67.)  *Moore* v. *Bickham*, (4 *Binn.* 1.)  *Cook* v. *Calloway*, (1 *Esp.* 116.)  *Richards* v. *Barton*, (1 *Esp.* 268.)

5. The recital in the deeds from Scott to the plaintiffs of the amount of the consideration paid by them ought not to have been admitted.  It is well settled that recitals are not evidence against third persons.  *Penrose* v. *Griffith*, (4 *Binn.* 231.)  *Garwood* v. *Dennis*, (*Id.* 327.)  *Morris* v. *Vanderen*, (1 *Dall.* 67.)  *Pipher* v. *Lodge*, (16 *Serg. & Rawle*, 522.)  The proper proof of the fact was the oath of Scott himself.  It is very common to overstate the amount of the consideration in a deed.

Mr. *J. R. Ingersoll*, for the plaintiffs.

The declaration described the contract accurately in all respects excepting the distance from Twelfth street.  The evidence showed clearly that this was an attempt at a fraud on the part of the defendant, who got possession of the plaintiffs' deeds, and set them at defiance; and the case was so treated by the learned judge.

1. There was no substantial variance.  *Large* v. *Penn*, (6 *Serg. & Rawle*, 488.)  In the case of *Stevens* v. *Graham*, there was an alteration of a note after it was complete, which was held to vitiate it.  Where there are several points of resemblance, and one only in which there is an apparent variance, the question of identity is for the jury.  *Commercial Bank* v. *Clapier*, (3 *Rawle*, 335.)

2. There was no stipulation in the contract that there should be a joint conveyance.  The contract was drawn by the defendant, and

was very loose and informal. This was an entire contract which they offered to fulfill; but the defendant refused to take any title at all.

3. The deed from Freeman Scott, recited that it was part of a large lot which Elihu Chauncey and others conveyed to Scott by a deed duly recorded. The prior deeds of course remained with the grantor, but there was a sufficient reference to the record. In *Ward* v. *Fuller*, (15 *Pickering*, 185, 188,) it is said, that in the absence of other evidence, a deed duly executed and recorded, vests a title in the grantee. There was no suggestion on the part of the defendant of a defective title. The authorities cited on the other side are all cases of a collateral title.

4. The deed showed on its face that the erasure was made before execution. The usual memorandum was made to this effect; and this would always be evidence without calling upon the scrivener to give parol evidence. *Marshall* v. *Gougler* (10 *Serg. & Rawle,* 164.) *Heffelfinger* v. *Shutz*, (16 *Serg. & Rawle*, 44.)

5. The recitals in the deeds from Scott to the plaintiffs, were admitted merely as *prima facie* evidence, which the defendant might have contradicted if he had thought proper. Recitals in deeds have often been admitted against third persons. The deeds from Scott were evidence for the purpose of showing title in the plaintiffs; and all parts of them were necessarily before the jury.

The opinion of the Court was delivered by

Kennedy.—Upon very full and deliberate consideration, I can discover no reason for changing the opinion which I expressed and delivered to the jury, at the trial of this cause, on the several points raised by the counsel for the defendant. The Court in bank also approve of it; and see no ground for granting a new trial. The reasons for a new trial being filed by the counsel, before he became possessed of the charge, as reduced to writing and delivered to the jury, will account for some of them, as it will be seen, not being sustained by any thing contained in the charge. It is not deemed requisite to add any thing here in further support of the principles and reasoning laid down and used therein to the jury. It may, however, be observed, that the action was not brought with a view to enforce a specific performance of the contract; but for the recovery merely, of such damages as the plaintiffs had sustained by reason of the defendant's wilful refusal to carry it into effect; and this was all that was claimed on the trial of the cause. It appeared by the evidence given on the part of the plaintiffs, which was in no way contradicted, and could not therefore be well controverted, that the defendant had not only refused to pay the purchase-money, but had positively discharged the plaintiffs from making him a title or deeds of conveyance, for the lots mentioned in

(Britton *v*. Stanley.)

the agreement. The plaintiffs however, notwithstanding such discharge, in order, as it would seem, that there should not be the least colour or pretence for charging them with any default, in not being willing to perform their part of the contract, prepared and executed deeds of conveyance at their own expense, conveying the lots in fee simple to the defendant, which they tendered to him; but he, after making some objections to them, not recollected by the witnesses, refused to accept; and concluded his refusal, by reminding the plaintiffs that he had before told them, that he would not accept of any deeds which they would get drawn. The plaintiffs, after this, being content to retain their lots, and to receive a compensation merely for the loss which they had sustained by reason of the defendant's having, rather perversely, as it would seem from the evidence, refused to comply with his contract, instituted this action, for the purpose of recovering such compensation; and the defendant having discharged the plaintiffs from making to him a conveyance, could not afterwards set up, on the trial of the cause, their not having done so, as a defence to such recovery. Even had the plaintiffs claimed here the whole purchase money, the tender of a conveyance, after the defendant's discharging the plaintiffs from making it, would not seem to have been requisite, according to the principle decided in *Jones* v. *Barkley*, (*Doug. Rep.* 684.) *Sugden's Law of Vend.* 245,6.

Indeed, we are satisfied, that the merits of the case, as disclosed by the evidence, have been fully met and answered by the verdict of the jury. The rule for a new trial is therefore discharged, and judgment entered upon the verdict.

Rule discharged.